**STATE of Missouri, Respondent,**

v.

**Elmer Don DAVIS, Appellant.**

**No. 54112.**

Supreme Court of Missouri, Division No. 2.

Jan. 12, 1970.

John C. Danforth, Atty. Gen., Warren K. Morgens, Asst. Atty. Gen., Jefferson City, for respondent.

J. Arnot Hill, Kansas City, for appellant; Willard B. Bunch, Chief Defender, Paul T. Miller, Executive Director, of counsel.

BARRETT, Commissioner.

A jury found the appellant Elmer, better known as "Tino," Davis guilty of robbery with a dangerous weapon and fixed his punishment at ten years' imprisonment. The circumstances were that Theresa Flores and Theresa Quinn were employed by the Merritt Broker Service Company with offices on the fifth floor of the Altman Building on 11th Street in Kansas City. On May 26, 1967, earlier in the day Mrs. Flores had seen two men outside the office door and so had called her sister-in-law in another office to get in touch with the building manager. Because of a prior holdup a few days previously they kept the door locked. But later in the day one of the men again appeared at the door and Mrs. Flores told Miss Quinn to let the man in and she proceeded to take his application for a loan. While doing so she saw "another man peeked around" the glass in the door and immediately the man from whom she was taking the application pulled a gun from his waistband and said, "Be still, you won't get hurt." The gunman came around the counter and at gun point forced Mrs. Flores to hand him the money from the safe, $350.00. With tape the robber bandaged the arms and legs of Mrs. Flores and Miss Quinn and fled with the money. At the trial and before as to identification of the defendant, Mrs. Flores said, "that man there looks like him. Like I said, I am not positive because he wore a hat." And she said of the man she saw in a police photograph, "It looks like him."

Mrs. Flores was impressed with his clothes "he was dressed real nice, and he had a straw hat, orange, white, brown different colored shirt." Incidentally the men in the hall and in the office, as is the defendant, were Negroes. And Miss Quinn in testifying in chief for the state positively identified the defendant Davis as the man who held them up and taped their arms and legs. From a description of the men who left the Altman Building in a "red 1965 Ford" police pursued and stopped the automobile at 30th and Paseo but "two colored males had fled from the car before my arrival." The automobile was a taxicab driven by Priscilla Herring. She had known "Tino" when he too had been a cabdriver for Consolidated Cabs.

The appellant was not arrested until November 19, 1967. Upon Tino's trial Priscilla testified that May 26, 1967, he came to her residence and "asked me to take him down town." He had her stop at 29th Street and Paseo and picked up another man he called "Bob" (Robert Shaw who was in the penitentiary when Tino was tried). Priscilla, according to Tino's directions, parked at the corner of 12th Street, Tino and Bob left and in fifteen to twenty minutes returned, carrying a "little paper sack," got in the automobile and told her to drive home and at 24th and Vine they stopped to buy a six-pack of beer and at 29th and Paseo when the police car came "They just jumped out of the car" and "Ran." Upon his trial for robbery Priscilla identified the appellant whom she had known for some time as one of the passengers in her car and as one who fled. Incidentally the Quinn girl testified that after he was handed the money the robber "had a brown paper sack about that big (indicating). He put some of it in it and he shoved some of it in his pocket."

While appellant does not challenge the sufficiency of the evidence these briefly noted circumstances, needless to say, support the charge and the jury's finding of robbery. State v. Preston, Mo., 184 S. W.2d 1015; State v. Foster, Mo., 349 S.

W.2d 922. Upon this appeal Tino's counsel has filed two briefs, in one he makes the point that "the in-court identification of appellant was unnecessarily suggestive and conducive to misidentification, and denied him due process of law in violation of the Fifth Amendment of the Constitution of the United States." This point has to do with his claim that the police had a picture of Bob Shaw "who," to quote from appellant's brief, "accompanied him to town on the day of the robbery. Appellant denied participation in the robbery and inferred that his companion Bob could have been the robber." And so it is urged that Miss Quinn in the trial of this cause should have been shown the photograph of Shaw because, assertedly, she or Mrs. Flores "might have identified Shaw as the robber." It is not necessary to pursue this argument in detail, it was stipulated during the closing argument that Shaw's picture, not offered as an exhibit, could be introduced and passed to the jury. The appellant translates this episode and contention into an instance of the state's knowingly and deliberately suppressing evidence, particularly exculpatory evidence, thus infringing his right to a fair trial. State v. Thompson, Mo., 396 S.W.2d 697; United States v. Keogh, 2 Cir., 391 F.2d 138; Barbee v. Warden, Maryland Penitentiary, 4 Cir., 331 F.2d 842. It may only be said that the recited circumstances do not fall within either the facts or the rules considered and applied in the three cases relied on by the appellant.

■ In his second brief appellant's counsel has made the additional point that the "court erred in allowing the assistant prosecutor in his closing remarks to urge appellant's conviction and punishment because of his prior convictions." The evidence as to appellant's prior convictions came in without objection on his cross-examination. The state's attorney's argument was not so manifestly inflammatory and prejudicial as to demand without objection some action on the part of the court. In this connection see State v. Tiedt, 360 Mo. 594, 229 S.W.2d 582; State v. Rhoden, Mo., 243 S.W.2d 75. The only reference to appellant's prior convictions came in the state's opening argument and in the argument of defendant's counsel, there was no reference to it in the state's closing argument and so whatever practical use made of it, it did not go unanswered. In any event there was no objection to the state's argument and no request whatever for action on the part of the trial court, it was mentioned only and for the first time without specificity (Criminal Rule 27.20 V.A.M.R.) in these insufficiently general terms in the motion for a new trial: "The prosecuting attorney made prejudicial and inflammatory statements during his closing argument which denied the defendant a fair and impartial trial." In these circumstances there being no objection to the argument when made "the alleged error is not preserved for review." State v. Cheek, Mo., 413 S.W.2d 231, 236; State v. McCrady, Mo., 416 S.W.2d 175; State v. Williams, Mo., 423 S.W.2d 736.

Accordingly the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.